IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**MADY MARIELUISE SCHUBARTH**
1100 Ptarmigan Drive
Walnut Creek, California 94595,

Plaintiff

v.

**THE FEDERAL REPUBLIC OF GERMANY**
Berlin, Germany,

and

**BVVG BODENVERWERTUNGS- UND -VERWALTUNGS GMBH**
Schönhauser Allee 120
10437 Berlin, Germany,

Defendants

Civ. No. 1:14-cv-2140

**Complaint for Damages for Expropriation**

Mady Marieluise Schubarth respectfully alleges:

## Introduction

1. This action is based upon Germany's expropriation of property belonging to a United States citizen, without provision for payment of just compensation as required by a bilateral treaty between Germany and the United States, in violation of international and German law. Agencies and instrumentalities of Germany have owned or operated, and continue to own or operate, Mrs. Schubarth's estate, located in former East Germany. Further, such agencies and instrumentalities have engaged, and continue to engage, in commercial activity in the United States, including the sales marketing of Mrs. Schubarth's estate to potential buyers in the United States.

**Parties**

2. Plaintiff MADY MARIELUISE SCHUBARTH ("Mrs. Schubarth") is a natural person and a citizen of the United States and the State of California. She resides at 1100 Ptarmigan Drive, Walnut Creek, California.

3. Defendant FEDERAL REPUBLIC OF GERMANY ("Germany") is a foreign sovereign state, with its capital at Berlin, Germany, and is party to the bilateral Treaty of Friendship, Commerce and Navigation Between the United States of America and the Federal Republic of Germany, October 29, 1954, 7 U.S.T. 1839, T.I.A.S. No. 3593 ("FCN Treaty"). Germany has acted at material times herein through the German Government and through its agencies and instrumentalities within the definition of 28 U.S.C. § 1603(b). These agencies, instrumentalities and entities include, inter alia, the *BVVG Bodenverwertungs- und -verwaltungs GmbH*.

4. Defendant BVVG BODENVERWERTUNGS- UND -VERWALTUNGS GMBH ("BVVG") is a foreign state as defined in 28 U.S.C. § 1603(a). It also is an agency or instrumentality of Germany as defined in 28 U.S.C. § 1603(b). The BVVG is a German state-owned entity founded by statute in 1991. It is responsible, inter alia, for the management, marketing and sale of expropriated properties located in the former German Democratic Republic (East Germany). Specifically, the BVVG manages and privatizes agricultural and forest lands seized by East Germany in the German states of Brandenburg, Mecklenburg-Western Pomerania, Saxony, Saxony-Anhalt and Thuringia. It is one of three successor agencies to the *Treuhandanstalt* (Trust Agency), which operated from 1990–1994. The BVVG provides information about the expropriated properties it controls to potential buyers, including lease and purchase prices, and other commercial terms. Its predecessor, the Trust Agency, carried out these commercial activities, inter alia, with an office and staff in the United States. Subsequently, the BVVG has continued these

activities by posting links to such information on its website. The BVVG has acted as a privatization agency for the German government since 1996, and as an agent for the German federal agency responsible for certain reunification-related tasks in the areas of contract management and reprivatization since 2009. Between 1992 and 2008, the BVVG and its predecessor, the Trust Agency, collected at least €3.5 billion from successful land marketing and sales.

**Jurisdiction**

5. Jurisdiction in this action is predicated on 28 U.S.C. § 1330(a), which provides: "The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement"; 28 U.S.C. § 1331, which provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"; and the FCN Treaty construed as German law.

6. Under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1604 and 1605(a)(1) and (a)(3), and Article XVIII, Paragraph 2 of the FCN Treaty, Germany and the BVVG are not immune from suit in the courts of the United States with respect to this action. Section 1605(a)(1) provides:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—(1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver.

Section 1605(a)(3) provides, inter alia:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

> … (3) in which rights in property taken in violation of international law are in issue and … that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States[.]

7. Further, Germany expressly waived foreign sovereign immunity of the BVVG under Article XVIII, Paragraph 2 of the FCN Treaty, which provides:

> No enterprise of either Party, including corporations, associations, and government agencies and instrumentalities, which is publicly owned or controlled shall, if it engages in commercial, industrial, shipping or other business activities within the territories of the other Party, claim or enjoy, either for itself or for its property, immunity therein from taxation, suit, execution of judgment or other liability to which privately owned and controlled enterprises are subject therein.

8. Germany and the BVVG are subject to personal jurisdiction by virtue of 28 U.S.C. § 1330(b), which provides: "Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title." Germany is subject to service of process in this action under the provisions of 28 U.S.C. § 1608(a) and the BVVG is subject to service of process in this action under the provisions of 28 U.S.C. § 1608(b).

**Venue**

9. Venue for this action is the United States District Court for the District of Columbia, under 28 U.S.C. § 1391(f)(4).

**Claim for Relief**

10. Mrs. Schubarth realleges paragraphs 1-9.

11. Mrs. Schubarth was the sole owner of the Liebringen Estate—41 parcels of partially developed agricultural land (totaling over 500 acres) in the State of Thuringia, Germany—which she inherited from her parents in 1973.

12. In 1990, following the collapse of the East German regime, vast quantities of property in former East Germany, including the Liebringen Estate, were transferred to the Trust Agency, a German federal institution and an agency or instrumentality of Germany. Portions of the Liebringen Estate were sold by the Trust Agency, and later by the BVVG as successor to the Trust Agency, to private investors in Germany and elsewhere.

13. The Trust Agency was tasked with the privatization and sale of expropriated property. It maintained an office in New York in the early 1990s to market and sell properties under its administration, including the Liebringen Estate, to investors in the United States and elsewhere. The Trust Agency's marketing efforts in the United States resulted in $1.65 billion in sales. Following the closure of its New York office, the Trust Agency pursued marketing efforts over the Internet. When the BVVG succeeded to the Trust Agency's responsibilities concerning agricultural and forest lands in the early to mid-1990s, it adopted and continued the Trust Agency's marketing efforts. Those marketing efforts, which constitute ongoing commercial activity in the United States, continue to the present day.

14. In 1991, following German reunification, Mrs. Schubarth applied to the State Agency for Open Property Issues in Thuringia ("Thuringia State Agency"), an agency or instrumentality of Germany, for restitution of the Liebringen Estate. That agency granted restitution of a single house and surrounding land but in 1992 denied her restitution claim as to the rest of her property. That denial constituted an expropriation of her property by the new, unified Federal Republic of Germany

15. Having become a United States citizen in 1963, and thereby automatically losing her German citizenship by operation of German law then in effect, Mrs. Schubarth was entitled to the protections afforded by the FCN Treaty at the time Germany expropriated the Liebringen Estate in 1992. Thus, Mrs. Schubarth's ownership of, and right

to use, the Liebringen Estate was protected by the FCN Treaty. The FCN Treaty specifically provides, among other things, as follows:

> 1. Property of nationals and companies of either Party shall receive the most constant protection and security within the territories of the other Party.
>
> * * *
>
> 3. Neither Party shall take unreasonable or discriminatory measures that would impair the legally acquired rights or interests within its territories of nationals and companies of the other Party[.]
>
> 4. Property of nationals and companies of either Party shall not be taken within the territories of the other Party, except for the public benefit and in accordance with due process of law, nor shall it be taken without just compensation. Such compensation shall represent the equivalent of the property taken and shall be made in an effectively realizable form and without unnecessary delay.

(Art. V, ¶¶ 1, 3, 4.)

16. Having been ratified by the German Parliament as provided in the German Federal Constitution, the FCN Treaty is domestic German law.

17. In 1957, Germany's Federal Court of Justice—the highest court in the system of ordinary civil jurisdiction in Germany—issued a decision confirming that the FCN Treaty is part of Germany's domestic law. Specifically, the court explained that "[a]s a result of the ratification laws passed by German lawmakers … the contents of the [FCN Treaty] became domestic law and once the Treaty became effective … it became fully effective as well." The Federal Court of Justice held further that, in the case of seizure of property belonging to a United States citizen, the FCN Treaty must take precedence over inconsistent domestic legislation dealing generally with compensation payable to owners of seized property. It rejected the application of other German domestic law to the request for compensation by a United States citizen as follows: "Given that the owners are citizens of the United

States … the provision concerning the value assessment of property seizure compensation arising from the [FCN Treaty] is the applicable law in this matter." Finally, the Federal Court of Justice affirmed the FCN Treaty's compensation standard as requiring reimbursement of the full value of the property seized. It did so by reference to the FCN Treaty's plain language, which it explained in German "can only mean that the full value of the seized object must be reimbursed[,]" and in English "rule[s] out any doubt that anything other than the actual equivalent value of the property seized at the time it was seized would have been considered."

18. In 1994, Germany enacted the Compensation Act, which provided a process by which owners of expropriated property whose restitution claims were denied could apply for compensation equal to five percent of some nominal value. Mrs. Schubarth timely applied for compensation in 1995, claiming, consistent with the FCN Treaty and the 1957 Federal Court of Justice decision, that the FCN Treaty entitled her to be paid one hundred percent of the property's fair market value as of the date of expropriation. Her compensation claim remained pending for 19 years.

19. On February 25, 2014, the Thuringia State Agency issued a proposed decision in which it recognized that Mrs. Schubarth was the owner of the Liebringen Estate and that the estate had been expropriated, proposing to award her €35,279 as compensation for the expropriation.

20. On November 12, 2014, Mrs. Schubarth requested that the Thuringia State Agency apply to Germany's Federal Ministry of Finance for an opinion on the applicability of the FCN Treaty to her claim for compensation.

21. On November 18, 2014, the Thuringia State Agency issued its final administrative decision without referencing the FCN Treaty or the 1957 Federal Court of Justice decision, affirming its February 25, 2014 proposed decision in all material respects.

The final decision by the Thuringia State Agency constitutes an admission of liability on behalf of Germany. It admits, among other things, that Mrs. Schubarth was the owner of the Liebringen Estate, that the Liebringen Estate was expropriated, and that Mrs. Schubarth is entitled to compensation payable by Germany.

22. The final decision by the Thuringia State Agency, which awarded Mrs. Schubarth a paltry amount that pales in comparison to the fair market value of the Liebringen Estate, puts Germany in violation of its FCN Treaty commitments to the United States and United States citizens in at least three respects.

23. *First*, Germany's refusal to grant restitution to Mrs. Schubarth of nearly all of the Liebringen Estate violated Article V, Paragraph 1 of the FCN Treaty, which required that Mrs. Schubarth's property "receive the most constant protection and security within the territory[ ] of [Germany]."

24. *Second*, the Thuringia State Agency's decision constitutes an "unreasonable … measure[ ] that … impair[ed] the legally acquired rights or interests within its territories of nationals" of the United States, in violation of Article V, Paragraph 3 of the FCN Treaty.

25. *Third*, the Thuringia State Agency's final administrative decision, awarding Mrs. Schubarth compensation of only a tiny fraction of the fair market value of the Liebringen Estate, violated Article V, Paragraph 4 of the FCN Treaty, which required fair market value compensation for her expropriated property. It is also contrary to the German Federal Court of Justice's 1957 decision, which amply supports Mrs. Schubarth's claim to full compensation for the expropriation of the Liebringen Estate. Moreover, Germany's actions—establishing a compensation scheme that failed to take account of its treaty obligations to United States citizens—violates international law.

26. Germany was and is liable, under the FCN Treaty as German law, for the failure to provide Mrs. Schubarth full compensation for the expropriation of the Liebringen Estate.

27. German law provides that an aggrieved party may bring a judicial action to enforce such rights accorded either by statute or treaty. Further, German law does not require that such a suit be brought in a German court as opposed to in a foreign court of competent jurisdiction.

28. Under applicable German law, Mrs. Schubarth is therefore entitled to: (1) fair market value compensation for the expropriation of the Liebringen Estate; (2) compensation for the loss of the use of the Liebringen Estate or loss of the opportunity to earn a reasonable profit from the Liebringen Estate; (3) prejudgment interest at the statutory rate of ten percent per annum from the date of expropriation until the date Germany pays her fair market compensation; and (4) reasonable attorneys' fees and expenses incurred in the pursuit of her rights.

WHEREFORE, Mrs. Schubarth prays for relief as follows:

1. That Mrs. Schubarth recover damages in an amount not less than 96 million euros (or its equivalent in U.S. dollars), for the expropriation of her property and her loss of use of the Liebringen Estate (or her lost opportunity to earn a reasonable profit from the Liebringen Estate);

2. That Mrs. Schubarth be awarded prejudgment interest at ten percent per annum;

3. That Mrs. Schubarth be awarded her reasonable attorneys' fees, costs and prejudgment interest thereon; and

4. That Mrs. Schubarth be granted such further relief as the Court deems just and proper.

Dated: December 17, 2014

Respectfully submitted,

/s/ *Mark N. Bravin*

Mark N. Bravin (DC Bar No. 249433)
Eric M. Goldstein (DC Bar No. 989671)
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006
Phone: (202) 282-5000
Fax: (202) 282-5100

*Counsel for Mrs. Schubarth*