UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MADY MARIELUISE SCHUBARTH**, <br><br> Plaintiff, <br><br> v. <br><br> **FEDERAL REPUBLIC OF GERMANY & BVVG**, <br><br> Defendants. | Case No. 1:14-cv-02140 (CRC) |

## MEMORANDUM OPINION

Plaintiff Mady Marieluise Schubarth, a U.S. citizen who allegedly inherited a large estate that was expropriated by the East German government following World War II, seeks to recover the value of the taken property from Germany and a German state-owned entity. The Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, *et seq.*, however, generally grants sovereign entities immunity from suit, absent a relevant exception. Because Schubarth has not alleged facts supporting the application of any relevant FSIA exception, the Court lacks jurisdiction over her claims. The Court will therefore dismiss the case.

**I.     Background**

Schubarth alleges that an estate she inherited—comprising over 500 acres of partially developed agricultural land in the state of Thuringia, Germany—was expropriated by the East German government in 1945. Compl. ¶ 11. In 1991, following Germany's reunification, Schubarth applied to a Thuringia state agency for restitution of the expropriated property. Id. ¶ 14. Dissatisfied with the agency's award, which she says amounted to a small fraction of the total estate, Schubarth reapplied in 1995 for additional compensation pursuant to a German law that had been recently enacted. Id. ¶ 18. She claimed that under the 1956 Treaty of Friendship,

Commerce and Navigation between the United States and Germany ("FCN Treaty"), 7 U.S.T. 1839, she was entitled to the full, fair market value of the property as of the date of expropriation. Id. Schubarth's application remained pending for nineteen years, until February 2014, when the Thuringia state agency recognized her as the owner of the estate and proposed to award her € 35,279 in compensation. Id. ¶¶ 18–19. Despite Schubarth's complaint that this amount was too low, and out of step with Germany's obligations under the FCN Treaty, the agency finalized the award in November 2014, without referencing the Treaty. Id. ¶ 21.

The following month, Schubarth brought suit in this Court, naming as Defendants the Federal Republic of Germany ("Germany") and BVVG Bodenverwertungs- und- verwaltungs GmbH ("BVVG")—a German state-owned entity "responsible . . . for the management, marketing and sale of expropriated properties located in" former East Germany. Id. ¶¶ 3–4. To execute its mission, BVVG "provides information about the expropriated properties it controls to potential buyers, including lease and purchase prices, and other commercial terms," and allegedly, from 1992 to 2008, "BVVG and its predecessor, the Trust Agency, collected at least € 3.5 billion from successful land marketing sales." Id. ¶ 4. Schubarth alleges that "Germany was and is liable[] under the FCN Treaty . . . for the failure to provide [her with] full compensation for the expropriation of [her] estate," and that she is entitled to the estate's fair market value, expectation damages, prejudgment interest, and applicable attorneys' fees. Id. ¶¶ 26, 28.

After a protracted period during which service was effectuated on Germany and BVVG, Defendants now move to dismiss Schubarth's action on numerous grounds. They primarily contend that they are immune from suit under the FSIA because Schubarth has not pled facts establishing the requirements of the expropriation exception to FSIA immunity, 28 U.S.C.

§ 1605(a)(3).  Defs.' Mem. Supp. Mot. Dismiss ("Defs.' MTD") 3–9.  In particular, Defendants maintain that among other pleading deficiencies, Schubarth has not alleged sufficient facts showing that BVVG "is engaged in a commercial activity in the United States," 28 U.S.C. § 1605(a)(3), which is a prerequisite for establishing the applicability of that exception.  Defs.' MTD 3–9.  Defendants also argue that the Court lacks personal jurisdiction over them, and that Schubarth has failed to state a claim for relief.  Id. at 11–12.

## II.   Legal Standards

Defendants have asserted immunity under the FSIA by challenging the legal sufficiency of Schubarth's allegations, not the underlying facts themselves.  Where that is so, a court must "take the plaintiff's factual allegations as true and determine whether they bring the case within . . . the [FSIA] exception[ ] to immunity invoked by the plaintiff."  Simon v. Republic of Hungary, 812 F.3d 127, 147 (D.C. Cir. 2016) (quoting Phoenix Consulting Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000)) (alteration in original).  Ultimately, Defendants carry the burden of persuading the court "that the plaintiff's allegations do not bring its case within [the relevant] exception to immunity."  Phoenix Consulting, 216 F.3d at 40 (citing Transamerican S.S. Corp. v. Somali Democratic Republic, 767 F.2d 998, 1002 (D.C. Cir. 1985)).  "[D]ismissal is warranted if no plausible inferences can be drawn from the facts alleged that, if proven, would provide grounds for relief."  Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 93 (D.C. Cir. 2002).

## III.   Analysis

As mentioned above, Schubarth seeks to ground this Court's jurisdiction in the FSIA's expropriation exception, 28 U.S.C. § 1605(a)(3).  That provision applies to a case

> in which rights in property taken in violation of international law are in issue and [either] [1] that property or any property exchanged for such property is present in

>the United States in connection with a commercial activity carried on in the United States by the foreign state; or [2] that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States.

Id. Schubarth has not alleged that the expropriated property (or property exchanged for it) is "present in the United States," and she therefore concedes that clause [1] is inapplicable here. See Pl.'s Mem. Opp'n Defs.' Mot. Dismiss ("Pl.'s Opp'n") 10–11. She hangs her hat instead on clause [2], arguing that provision may confer jurisdiction over both Defendants. Id.[1] However, because Schubarth has not alleged sufficient facts showing that the relevant "agency or instrumentality," BVVN, "is engaged in a commercial activity in the United States," clause [2]'s conditions are not met. Accordingly, the FSIA's expropriation exception to immunity is unavailable.

The FSIA defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d).[2] "The FSIA's legislative history provides as examples of a 'regular course of commercial conduct' commercial enterprises such as a mineral extraction company, an airline, or a state trading corporation."

---

[1] This argument implicates an apparent intracircuit conflict regarding whether satisfaction of the conditions in clause [2]—the "agency or instrumentality" prong of this provision—may confer jurisdiction only over an agency or instrumentality, or also over a parent foreign state. See Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela, No. 11-CV-01735 (CRC), 2016 WL 2771117, at *3–*5 (D.D.C. May 13, 2016) (discussing the D.C. Circuit's seemingly incompatible treatment of the expropriation exception's two commercial activity clauses in Agudas Chasidei Chabad of U.S. v. Russian Fed'n, 528 F.3d 934 (D.C. Cir. 2008) and Simon, 812 F.3d 127). Because the Court finds that clause [2]'s conditions are not satisfied, it is unnecessary to resolve that conflict here.

[2] The FSIA applies a more stringent definition to clause [1]'s phrase "commercial activity carried on in the United States by a foreign state": Such activity must "hav[e] substantial contact with the United States." 28 U.S.C. § 1603(e). This "substantial contact" requirement is inapplicable to the Court's analysis, which is confined to clause [2]. See Chabad, 528 F.3d at 947.

4

Abelesz v. Magyar Nemzeti Bank, 692 F.3d 661, 692 (7th Cir. 2012) (citing H.R. Rep. 94–1487, at 16).  A "particular commercial transaction or act" may include "a single contract" with a U.S. entity.  Id.  Given these standards and the language set forth in § 1605(a)(3), Schubarth's task is to allege facts making it plausible that BVVN has either "engaged" in "a regular course of commercial conduct" or in "a particular commercial transaction or act" in the United States.

She has not done so.  Schubarth alleges that BVVN's predecessor, the "Trust Agency," maintained a New York office "in the early 1990s" to market and sell properties, and that those marketing efforts resulted in a large volume of sales.  Compl. ¶ 13.  Courts assessing the FSIA's commercial activity requirement, however, have looked for evidence of recent or ongoing transactions.  See Chabad, 528 F.3d at 948 (U.S.-based contracts whose performance was ongoing or which had been recently entered into "[a]t the time of the filing of the suit" relevant to assessing U.S. commercial activity under FSIA); Abelesz, 692 F.3d at 693 (bonds issued in U.S. dollars through U.S. bank sufficient to show U.S. commercial activity under FSIA where bonds were *outstanding*, i.e., where they would mature at a future date); Altmann v. Republic of Austria, 317 F.3d 954, 961, 969 & n.5 (9th Cir. 2002) (book published in the United States in *months* prior to complaint filing showed relevant U.S. commercial activity).  By contrast, the activities of a predecessor entity occurring roughly *two decades* prior to the filing of the instant complaint do not reveal whether BVVG "*is* engaged" presently—or has been engaged recently—in commercial activity in the United States.  28 U.S.C. § 1605(a)(3).

Schubarth also alleges that BVVG's predecessor entity "pursued marketing efforts over the Internet," and that BVVG later "adopted and continued those marketing efforts . . . to the present day."  Compl. ¶ 13.  Those efforts include "posting links to . . . information [about expropriated properties available for lease or sale] on its website."  Id. ¶ 4.  In subsequent

briefing and attached exhibits, Schubarth elaborates that the website includes "forms for the submission of bids" on available properties, a page permitting "users from throughout the world to sign up for newsletters alerting them to newly available properties that meet desired criteria," and sections "presented in English [that] are clearly targeted to foreigners." Pl.'s Opp'n 7.[3]

These allegations are marked by one critical deficiency: None of them links BVVG's commercial activity to the United States. At most, BVVG's website—some of which is in English, the international language of commerce—shows an effort to solicit business from *foreigners* generally. But none of those webpages bespeak an attempt to target the United States market specifically. In fact, the website screenshots attached to Schubarth's Opposition affirmatively suggest an alternative reason for the use of English: "Since the year 2000, BVVG [has] provide[d] consultancy services to *Eastern European and Central Asian countries* on the privatization of farm and forest land, land market development, institution building and land administration. In this context, BVVG has contributed to various *projects of international cooperation*." Pl.'s Opp'n, Ex. E (emphasis added). BVVG's consulting service is also the subject of the English-language brochure Schubarth highlights. See Pl.'s Opp'n 7 & Ex. I. In this context, English is clearly being utilized as an international—not an American—language.

The cases Schubarth cites for support do little to aid her cause. Every one of them involved at least one alleged commercial transaction or solicitation that was indisputably tied to the United States. See Simon, 812 F.3d at 147 (defendant railway maintained "an agency for selling tickets, booking reservations, and conducting similar business in the United States"

---

[3] As noted above, Defendants have not contested the factual allegations underlying Plaintiff's assertion of jurisdiction under the FSIA. The Court therefore need not consider factual allegations or evidence presented outside of the Complaint in resolving Defendants' motion to dismiss. The Court does so here only for the sake of efficiency, in order potentially to avoid the time and expense of litigating a renewed complaint containing the relevant allegations.

Case 1:14-cv-02140-CRC Document 27 Filed 12/07/16 Page 7 of 8

(quoting complaint)); Chabad, 528 F.3d at 948 (defendant library and archive "entered [into] transactions for joint publishing and sales in the United States"); Abelesz, 692 F.3d at 693 (defendant bank "issued [$200 million in] bonds denominated and payable in U.S. dollars . . . through a U.S. investment bank"); Cassirer v. Kingdom of Spain, 616 F.3d 1019, 1032 (9th Cir. 2010) (defendant foundation engaged in long list of "commercial activities in the United States," including "shipping gift shop items to purchasers in the United States" and "placing advertisements in magazines distributed in the United States"); Altmann, 317 F.3d at 969 (defendant art gallery "author[ed], edit[ed], and publish[ed] in the United States" a book of paintings and "an English-language guidebook"); Siderman de Blake v. Republic of Argentina, 965 F.2d 699, 712 (9th Cir. 1992) (sovereign defendant, through corporation, "solicit[ed] and entertain[ed] . . . American guests" and "accept[ed] . . . American credit cards and traveler's checks"); Malewicz v. City of Amsterdam, 517 F. Supp. 2d 322, 332 (D.D.C. 2007) (defendant city "contracted with [U.S.] [m]useums," "received nearly € 25,000 as consideration for the contract," and "agreed to send several employees . . . to the United States").

In short, Schubarth has not alleged facts plausibly showing that BVVN "is engaged in a commercial activity in the United States." 28 U.S.C. § 1605(a)(3). The FSIA's expropriation exception is therefore inapplicable, and this Court is without subject matter jurisdiction over Schubarth's claims.[4] Accordingly, none of the Defendants' other grounds for dismissal need be addressed.

---

[4] Neither has Germany "waived sovereign immunity on behalf of the BVVG" by operation of the FCN Treaty and the FSIA's waiver exception to immunity, 28 U.S.C. § 1605(a)(1). Pl.'s Opp'n 27. The relevant FCN Treaty waiver applies to BVVG only "if it engages in commercial, industrial, shipping or other business activities within the territories of" the United States. Treaty of Friendship, Commerce and Navigation, U.S.-Germany, art. XVIII, July 14, 1956, 7 U.S.T. 1839. Schubarth does not posit any material distinction between this commercial-activity condition and the one set forth in FSIA's § 1605(a)(3). Accordingly, the

## IV.   Conclusion

For the reasons outlined above, the Court will grant Defendants' dismissal motion.[5] An Order accompanies this Memorandum Opinion.

*Christopher R. Cooper*
CHRISTOPHER R. COOPER
United States District Judge

Date:   December 7, 2016

---

FCN's waiver provision is inapplicable on account of the same deficiency precluding application of the expropriation exception.

[5] Plaintiff also filed a Motion to Strike Portions of Defendants' Reply Memorandum. Because the Court in reaching its holding has not relied on arguments advanced uniquely in Defendants' Reply, the Court will deny as moot Plaintiff's Motion to Strike.