**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **MADY MARYLOUISE SCHUBARTH**, |
| Plaintiff, |
| v. |
| **FEDERAL REPUBLIC OF GERMANY,** *et al.*, |
| Defendants. |

Case No. 14-cv-2140 (CRC)

## MEMORANDUM OPINION AND ORDER

Mady Marylouise Schubarth brings suit against Germany and a German state-owned entity—BVVG Bodenverwertungs- und- verwaltungs GMBH ("BVVG")—seeking compensation for the alleged expropriation of a family estate in the former East Germany.  In 2016, this Court granted a motion to dismiss filed by both defendants.  The Court held that it lacked subject matter jurisdiction over Mrs. Schubarth's claims because her complaint failed to allege sufficient facts to satisfy the expropriation exception of the Foreign Sovereign Immunity Act ("FSIA"), 28 U.S.C. § 1605(a)(3).  On appeal, the D.C. Circuit affirmed the Court's dismissal of Schubarth's claims against Germany but reversed as to those against BVVG.  Disagreeing with this Court, the Circuit held that the complaint could proceed against BVVG because Schubarth had plausibly alleged that BVVG "is engaged in commercial activity in the United States" as required to abrogate the immunity of an "agency or instrumentality" of a foreign state under the FSIA's expropriation exception.

Now back before this Court, BVVG has renewed its motion to dismiss.  It contests the timeliness of Schubarth's complaint under the applicable District of Columbia statute of limitations.  It raises an alternative jurisdictional road block that the Court declined to reach in

ruling on BVVG's initial motion to dismiss—namely, that BVVG is in fact a "foreign state" due to its governmental role in the German reunification process and therefore is immune from suit to the same extent as Germany itself.  And it contends that Schubarth has failed to state a valid claim that BVVG is somehow liable for the acts of the German government that Schubarth alleges resulted in the expropriation.

Schubarth has responded to BVVG's motion with one of her own.  She moves to amend her complaint in an effort to re-assert subject matter jurisdiction over Germany under a new theory and to shore up various of her allegations against BVVG's latest arguments for dismissal.

For the reasons explained below, the Court will deny BVVG's motion to dismiss and permit Schubarth to proceed to jurisdictional discovery.  And it will allow Schubarth to supplement her allegations against BVVG, but not to pursue her belated theory of FSIA jurisdiction against Germany.

## I. Background

The following factual background is drawn from the allegations in Mrs. Schubarth's amended complaint.[1]  In 1945, the Soviet Union (and subsequently East Germany) seized Schubarth's family estate (the "Liebringen Estate"), which consisted of over 500 acres of land in the state of Thuringia, Germany.  Am. Compl., ECF No. 50-2, ¶ 18; Opp'n, ECF No. 19 at 2–3. After Schubarth became an American citizen, and thereby lost her German citizenship, she inherited the estate from her parents in 1973.  Am. Compl. ¶¶ 18, 29.  In 1991, following

---

[1] Because "[c]ourts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss," James Madison Ltd. by Hecht v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996), the Court will, in the interests of judicial efficiency, evaluate defendants' arguments for dismissal against the allegations presented in Schubarth's proposed amended complaint, Howard v. Fed. Express Corp., 280 F. Supp. 3d 26, 29 (D.D.C. 2017).

Germany's reunification, she applied to the State Agency for Open Property Issues in Thuringia ("Thuringia State Agency") for restitution of the Liebringen Estate.  Id. ¶ 21.  The following year, that agency granted her restitution in the form of a small physical portion of the estate but denied her claim to the rest of the property.  Id.

In 1994, Germany enacted the Compensation Act, which created a process by which "owners of expropriated property whose restitution claims were denied could apply for compensation equal to five percent of some nominal value."[2]  Id.  Schubarth applied for additional compensation under that statute in 1995.  Id. ¶ 24.  In her application, she claimed that while the Compensation Act allowed only partial compensation, the 1956 Treaty of Friendship, Commerce and Navigation between the United States and Germany ("FCN Treaty"), 7 U.S.T. 1839, entitled her to the full, fair market value of the property as of the date of expropriation.  Id. She noted that the FCN Treaty prohibits Germany from taking the property of U.S. citizens without providing "just compensation" in an amount "equivalent of the property taken."  Id. ¶¶ 29, 30 (quoting FCN Treaty, Art. V. ¶ 4).  She also pointed to a 1957 decision of Germany's highest court, the Federal Court of Justice, which she says confirmed that the FCN Treaty was part of German domestic law and, in the case of seized property belonging to a U.S. citizen, held that Germany's obligations under the FCN Treaty trumped inconsistent domestic legislation dealing generally with compensation for owners of seized property.  Id. ¶ 22.  According to Schubarth, the Federal Court of Justice specifically interpreted the Treaty to require that "the full value of the seized object must be reimbursed[,]" and eliminated "any doubt that anything other than the actual equivalent value of the property seized at the time it was seized" could be

---

[2] Although Schubarth's complaint is unclear on this point, the Court assumes that "five percent of some nominal value" means five percent of the fair market value of the property.

awarded.  Id.  In 1990, the complaint alleges, Germany's Ministry of Finance reaffirmed that "certain U.S. citizens would be fully compensated under the FCN Treaty."  Id. ¶ 23.

Schubarth's application to the Thuringia State Agency remained pending for nineteen years, until February 2014, when the agency finally recognized her as the owner of the Liebringen Estate, acknowledged that the land had been expropriated, and proposed a compensation award of €35,279, representing 5% of the fair market value.  Id. ¶¶ 24–25.  In November 2014, Schubarth requested that the Thuringia State Agency apply to Germany's Federal Ministry of Finance for an opinion on the applicability of the FCN Treaty to her claim for compensation.  Id. ¶ 26.  Despite this request, the agency promptly finalized the award without referencing the Treaty or the 1957 decision of the Federal Court of Justice.  Id. ¶ 27.

The following month, Schubarth filed suit in this Court against Germany and BVVG.  Id. ¶¶ 3–4.  As relevant here, she alleged that BVVG is a state-owned, private corporation that is "an agency or instrumentality of Germany as defined in 28 U.S.C. § 1603(b)" and is "responsible . . . for the management, marketing and sale of expropriated properties located in" former East Germany.  Id. ¶¶ 4, 8.  BVVG (and its predecessor agency) "provided marketing information to potential buyers about the expropriated properties it owned and operated, including lease and purchase prices, and other commercial terms," including through an office located in the United States.  Id. ¶ 9.  Schubarth maintained that from 1992 to 2008, these entities "collected at least €3.5 billion from successful land marketing sales."  Id.  Schubarth further claimed that "Germany and BVVG were and are liable, under U.S. and international law and under the FCN Treaty as [incorporated into] German law, for the failure to provide Mrs. Schubarth full compensation for the expropriation of the Liebringen Estate."  Id. ¶ 34.  Germany

and BVVG are also liable under various provisions of the German Civil Code and U.S. common law, she contended, "for their failure to provide [her] with just compensation for the taking." Id.

After a protracted period during which service was effectuated on Germany and BVVG, defendants moved to dismiss Schubarth's action on numerous grounds.  In their initial motion to dismiss, they contended that they are immune from suit because Schubarth had not pled facts establishing the requirements of the expropriation exception to FSIA immunity, 28 U.S.C. § 1605(a)(3).  Defendants maintained that, among other pleading deficiencies, Schubarth had not sufficiently alleged acts showing that BVVG "is engaged in a commercial activity in the United States," 28 U.S.C. § 1605(a)(3), which is a prerequisite for applying the expropriation exception in cases where the property in question is located outside the United States.

The Court granted the motion, holding that the expropriation exception was inapplicable to both defendants because it was undisputed that the property was located outside the United States and Schubarth had not adequately pled that BVVG had engaged in "commercial activity in the United States."  Schubarth v. Fed. Republic of Germany, 220 F. Supp. 3d 111, 116 (D.D.C. 2016).  Though Schubarth alleged that BVVG's predecessor agency had maintained an office in New York City in the 1990s, that BVVG posted website ads in English, and that BVVG and its predecessor agency conducted billions of dollars in business, the Court found that this alleged conduct was either too temporally remote or insufficiently connected to the United States to constitute recent commercial activity in this country.  Id. at 114–16.

Because the Court concluded that the complaint did not adequately allege commercial activity in the United States so as to trigger the expropriation exception, it also found that Schubarth did not meet the requirements of the FSIA's waiver exception, 28 U.S.C. § 1605(a)(1), via operation of the FCN Treaty,  220 F. Supp. 3d at 116 n.4.  And for the same

reason, the Court did not reach defendants' alternative argument that BVVG qualifies as a "foreign state" due to its role in privatizing property after German reunification and is thus immune to the same extent as Germany itself.  See id. at 116.

On appeal, the D.C. Circuit affirmed in part and reversed in part.  Schubarth v. Fed. Republic of Germany, 891 F.3d 392, 394–95 (D.C. Cir. 2018).  As to Germany, the Circuit held that "the District Court properly concluded U.S. courts cannot exercise subject matter jurisdiction over Schubarth's claims against Germany pursuant to the FSIA's expropriation exception."  Id. at 395.  As to BVVG, however, the Circuit held that while "the question was close, reading the complaint's factual allegations together and construing all reasonable inferences in Schubarth's favor, it is plausible that BVVG 'is engaged in a commercial activity in the United States,' including ongoing sales and marketing of previously expropriated land such as the Estate."  Id. (quoting 28 U.S.C. § 1605(a)(3)).  The Circuit expressly reserved for this Court to consider in the first instance (1) "whether BVVG is properly considered an 'agency or instrumentality' of Germany rather than the state itself" and (2) whether the FCN Treaty waived BVVG's immunity under the FSIA waiver exception, 28 U.S.C. § 1605(a)(1).  Id. at 395, 398 n.3.

Back in this Court following the Circuit's decision, BVVG renewed its motion to dismiss.  In that motion, BVVG contends (1) that Schubarth's claims are time barred; (2) that BVVG is a "foreign state" and therefore immune under the FSIA given that its core functions relate to German reunification; (3) that BVVG is also immune under the FSIA's waiver clause; and (4) that Schubarth's complaint fails to state a claim.  After BVVG filed its reply in support of its motion, Schubarth moved for leave to file an amended complaint.  She seeks to add factual allegations to the complaint that she contends would: (1) establish jurisdiction over Germany on

the basis that BVVG is Germany's "alter ego;" (2) support her position that BVVG's core functions are commercial—rather than governmental; (3) support her position that the Court should equitably toll the statute of limitations due to Schubarth's "diligent efforts to exhaust her administrative remedies"; and (4) support her position that BVVG is liable for "aiding and abetting Germany and/or conspiring with Germany . . . such that a constructive trust is appropriate."  The Court heard argument on both motions on February 10, 2020.

## II.   Legal Standards

BVVG challenges the legal sufficiency of Schubarth's allegations, not the underlying facts themselves.  Renewed Mot. to Dismiss ("Renewed MTD"), ECF No. 46, at 3.  The Court must therefore "take the plaintiff's factual allegations as true and determine whether they bring the case within" the exception to sovereign immunity invoked by the plaintiff.  Simon v. Republic of Hungary, 812 F.3d 127, 147 (D.C. Cir. 2016) (Simon I) (quoting Phoenix Consulting Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000)).  Ultimately, a defendant carries the burden of persuading the court "that the plaintiff's allegations do not bring its case within [the relevant] exception to immunity."  Phoenix Consulting, 216 F.3d at 40 (citing Transamerican S.S. Corp. v. Somali Democratic Republic, 767 F.2d 998, 1002 (D.C. Cir. 1985)).  "[D]ismissal is warranted if no plausible inferences can be drawn from the facts alleged that, if proven, would provide grounds for relief."  Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 93 (D.C. Cir. 2002).

### III.   Analysis

A.  <u>BVVG's Motion to Dismiss</u>

*1.   The statute of limitations does not conclusively bar Schubarth's claims*

BVVG first seeks dismissal under Rule 12(b)(6), asserting that Schubarth waited too long after her claim accrued to satisfy the statute of limitations.  "The applicable statute of limitations [in an FSIA case] is determined by the local law of the forum."  <u>Gilson v. Republic of Ireland</u>, 682 F.2d 1022, 1024 n.7 (D.C. Cir. 1982), <u>abrogated on other grounds by</u> <u>Saudi Arabia v. Nelson</u>, 507 U.S. 349 (1993).  Under the applicable D.C. statute, the limitations period is, at most, 15 years.[3]  BVVG maintains that one of several events could have triggered that fifteen-year statute of limitations term.  First, BVVG contends that the only expropriation that counts occurred in 1945, when the estate was seized by the Soviet Union.[4]  If that is so, the statute of limitations ran in 1960.  Alternatively, BVVG contends that if Germany's 1992 denial of full restitution for the property also constituted an expropriation, then the limitations period expired in 2007, seven years before Schubarth filed suit in this case.  At the very latest, BVVG argues Schubarth's claim accrued in 1994, when Germany enacted the Compensation Act, which established a maximum "compensation equal to five percent" of the value of the seized property.

---

[3]  Either of the two D.C. statutes of limitations that potentially apply here—D.C. Code § 12-301(3), which provides a three-year period for the recovery of damages for an injury to real or personal property, or § 12-301(1), which provides a fifteen-year period for the recovery of lands, tenements, or hereditaments—would yield the same result for purposes of BVVG's motion.  The Court therefore need not decide which limitations period applies.

[4]  BVVG correctly notes that although the parties and the Court have at times described this 1945 expropriation as perpetrated by East Germany, that is inaccurate as a matter of historical record because the German Democratic Republic, *i.e.* East Germany, was not formed until 1949.  From 1945 until 1949, the land that would become East Germany was occupied by the Soviet Union.  Renewed MTD at 5.

That law made clear, in BVVG's view, that Germany's domestic administrative process would not fully compensate Schubarth and thus her claims accrued at the time of the law's passage. If that is correct, Schubarth's claims expired in 2009, five years before she filed her complaint. Although BVVG acknowledges that the Thuringia State Agency took nineteen years to adjudicate her claim, it points out that Schubarth was not required to exhaust her claims.[5] The upshot, according to BVVG, is that Schubarth's decision to pursue a discretionary and plainly futile administrative process should not extend the accrual of her claim past 1994. Renewed MTD at 8–11.

As a threshold matter, Schubarth responds that the Court may not consider BVVG's limitations defense before deciding whether it has jurisdiction under the FSIA. And she is correct, of course, that a court "may not assume jurisdiction even to follow a better-marked path to disposition." Chalabi v. Hashemite Kingdom of Jordan, 543 F.3d 725, 728 (D.C. Cir. 2008); see also Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95 (1998). The D.C. Circuit has explained, however, that this "rule of priority does not invariably require considering a jurisdictional question before any nonjurisdictional issue." Kaplan v. Central Bank of the Islamic Republic of Iran, 896 F.3d 501, 513 (D.C. Cir. 2018). Instead, "courts may address certain nonjurisdictional, threshold issues" so long as those issues "can occasion a '[d]ismissal short of reaching the merits.'" Id. (quoting Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007) (alteration in original)). Because the "timeliness [of a claim] is a nonjurisdictional, threshold requirement," the Court may consider BVVG's statute of limitations

---

[5] As BVVG notes, in Simon II, the Circuit rejected a foreign sovereign's argument that, as a matter of international comity, FSIA plaintiffs were required to exhaust their claims in a domestic forum. Simon v. Republic of Hungary, 911 F.3d 1172, 1180–81 (D.C. Cir. 2018), petition for cert. filed No. 18-1447 (May 16, 2019).

argument before addressing FSIA jurisdiction.  <u>Matar v. Transp. Sec. Admin.</u>, 910 F.3d 538, 541 (D.C. Cir. 2018).

Turning to the merits of BVVG's limitations defense, there is a strong presumption against granting a motion to dismiss based on timeliness.  D.C. Circuit "case law makes clear [that] 'because statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred.'"  <u>de Csepel v. Republic of Hungary</u>, 714 F.3d 591, 603 (D.C. Cir. 2013) ("<u>de Csepel I</u>") (quoting <u>Firestone v. Firestone</u>, 76 F.3d 1205, 1209 (D.C. Cir. 1996)); <u>see</u> <u>Malewicz v. City of Amsterdam</u>, 517 F. Supp. 2d 322, 335 (D.D.C. 2007) ("Motions to dismiss based on a limitations defense are disfavored because resolution generally requires the development of a record and the adjudication of factual issues.").  Further, "[w]hen a case involves a basic international-law expropriation claim asserting a taking of a foreign national's property without payment of just compensation, there may be no violation until the plaintiff seeks (and is denied) compensation through the sovereign defendant's domestic laws."  <u>Simon I</u>, 812 F.3d at 148; <u>see also</u> <u>Republic of Austria v. Altmann</u>, 541 U.S. 677, 714 (2004) (Breyer, J., concurring) ("[A] plaintiff may have to show an absence of remedies in the foreign country sufficient to compensate for any taking.").  Said otherwise, if a plaintiff seeks compensation through a sovereign defendant's domestic process, the plaintiff's claim does not accrue until the claim is denied—so long as it is plausibly alleged that the domestic process could have provided relief.

Schubarth plausibly alleges that the German administrative process could have resulted in the relief she seeks here.  Her complaint states that the FCN Treaty requires full compensation for U.S. citizens; that the Treaty has been incorporated into German law; that Germany's highest court has determined that the Treaty superseded inconsistent domestic legislation dealing

generally with compensation payable to owners of seized property; and that Germany's Ministry

of Finance has reaffirmed that certain U.S. citizens would be fully compensated under the

Treaty.  Am. Compl. ¶¶ 22–24, 29.  When she applied to the Thuringia State Agency in 1995 for

additional compensation, Schubarth alleges that she raised the argument "that the FCN Treaty

entitled her to be paid one hundred percent of the property's fair market value as of the date of

expropriation, plus interest."  Id. ¶ 24.  And she alleges that when the state agency finally

adjudicated her claim in 2014 and awarded her €35,279 in compensation, she again contested

this partial compensation as contrary to Germany's obligations under the FCN Treaty.  Id. ¶¶ 24–

26.  At the motion to dismiss stage, these allegations are sufficient to show that the Thuringia

State Agency could have fully compensated her.  Accordingly, because she has alleged "a basic

international-law expropriation claim asserting a taking of a foreign national's property without

payment of just compensation," she has plausibly alleged that her claim did not accrue until she

"s[ought] (and [wa]s denied) compensation through the sovereign defendant's domestic laws." [6]

---

[6] Citing out-of-circuit precedent regarding municipal advertising ordinances, BVVG argues that Schubarth's claims accrued at the time that the Compensation Act was passed because it "applied in clear, specific ways" to Schubarth.  Renewed MTD at 10 (citing Nat'l Advert. Co. v. City of Raleigh, 947 F.2d 1158, 1163–1165 (4th Cir. 1991) ("Because the ordinance applied in clear, specific ways to National's thirty-six signs when enacted, and because any injury to National was real and could be calculated in terms of reduced present value on October 23, 1983, National's cause of action arose on that date.").  BVVG's argument is unpersuasive in light of the clear statement from the D.C. Circuit in Simon I that "[w]hen a case involves a basic international-law expropriation claim asserting a taking of a foreign national's property without payment of just compensation, there may be no violation until the plaintiff seeks (and is denied) compensation through the sovereign defendant's domestic laws."  812 F.3d at 148.  BVVG's argument fails even on its own terms, however, because unlike the sign ordinances at issue in National Advertising, Schubarth has plausibly pled that it was not clear "[i]mmediately upon enactment" of the Compensation Act that it "applied in clear, specific ways" to her claims, 947 F.2d at 1163–65, given that the FCN Treaty allegedly provides an equally clear (but contradictory) right to full compensation.

<u>Simon I</u>, 812 F.3d at 148.  Thus, her complaint is not "conclusively time-barred" such that it should be dismissed prior to discovery.  <u>de Csepel I</u>, 714 F.3d at 603.[7]

> ### 2.   *Schubarth has adequately pled that BVVG is an "agency or instrumentality of a foreign state"*

BVVG next moves for dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction.  Renewing an argument that the Court did not reach in its initial motion-to-dismiss ruling, BVVG contends that the FSIA's expropriation exception does not apply because it is not an "agency or instrumentality of a foreign state."  28 U.S.C. § 1605(a)(3).  Rather, BVVG maintains that it is part of the state itself—and therefore immune—due to its role in the quintessentially sovereign exercise of privatizing property after the fall of communism in East Germany.

The FSIA's expropriation exception abrogates sovereign immunity in cases

> [1] in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States *by the foreign state*;

> [2] or that property or any property exchanged for such property is owned or operated *by an agency or instrumentality of the foreign state* and that agency or instrumentality is engaged in a commercial activity in the United States.

28 U.S.C. § 1605(a)(3) (emphasis added).  Because the expropriation exception distinguishes between "foreign state[s]" and "agenc[ies] or instrumentalit[ies] of the foreign state," BVVG's

---

[7] The parties disagree on whether equitable tolling is available in FSIA cases governed by D.C. law.  Because BVVG has not established that "the complaint on its face is conclusively time-barred," <u>de Csepel I</u>, 714 F.3d at 603, and the case is proceeding to discovery anyway, the Court need not resolve that question at this time.

immunity would only be abrogated under the second clause of the exception if is an "agency or instrumentality" of Germany.[8]

To determine whether an entity is the "foreign state" itself or a foreign sovereign's "agency or instrumentality," courts apply the categorical inquiry established in Transaero, Inc. v. La Fuerza Aerea Boliviana, 30 F.3d 148 (D.C. Cir. 1994).  Under that approach, "if the core functions of the entity are governmental, it is considered the foreign state itself; if commercial, the entity is an agency or instrumentality of the foreign state."  Roeder v. Islamic Republic of Iran, 333 F.3d 228, 234 (D.C. Cir. 2003).[9]  Applying Transaero, courts in this Circuit have held that a state's ministry of foreign affairs, Roeder, 333 F.3d at 234, executive agencies, Owens v. Republic of Sudan, 374 F. Supp. 2d 1, 25–26 (D.D.C. 2005), and embassies, Howe v. Embassy of Italy, 68 F. Supp. 3d 26, 33 (D.D.C. 2014), must be treated as the state itself under the FSIA. See also Garb v. Republic of Poland, 440 F.3d 579, 594–95 (2d Cir. 2006) (holding that Poland's

---

[8] 28 U.S.C. § 1603(b), defines an "agency or instrumentality of a foreign state" as "any entity"

(1)    which is a separate legal person, corporate or otherwise, and

(2)    which is an organ of a foreign state or political subdivision thereof,  or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3)    which is neither a citizen of a State of the United States as defined  in section 1332(c) and (e) of this title, nor created under the laws of any third country.

[9] Although Transaero considered this question in the context of the FSIA's service-of-process requirements, 28 U.S.C. § 1608, the D.C. Circuit subsequently clarified, in an unpublished decision, that Transaero's inquiry also "applies to FSIA's expropriation exception" because the definitional portion of FSIA, § 1603, applies to both the service-of-process provision and the expropriation exception. Crist v. Republic of Turkey, 107 F.3d 922, *2 (table) (D.C. Cir. 1997). Crist has been followed by fellow courts in this district. E.g., Taylor v. Kingdom of Sweden, No. 18-1133, 2019 WL 3536599, at *3 (D.D.C. Aug. 2, 2019).

Ministry of the Treasury's core functions were governmental).  In contrast, the commercial operations of a state air force, <u>Auster v. Ghana Airways Ltd</u>., 514 F.3d 44, 46 (D.C. Cir. 2008), state-owned banks, <u>Shoham v. Islamic Republic of Iran</u>, 922 F. Supp. 2d 44, 49 (D.D.C. 2013), and state art museums have been determined to be largely commercial, <u>de Csepel v. Republic of Hungary</u>, 169 F. Supp. 3d 143, 167 (D.D.C. 2016), <u>appeal dismissed in part on other grounds</u>, 859 F.3d 1094 (D.C. Cir. 2017); <u>see also</u> <u>Magness v. Russian Federation</u>, 247 F.3d 609 (5th Cir. 2001) (holding that Russia's State Diamond Fund—a state agency "created to house and oversee Russia's collection of precious stones"—was a fundamentally commercial entity and therefore "an instrumentality of Russia").

These guideposts in mind, the Court turns to whether Schubarth has adequately pled that BVVG's core purposes are commercial.  According to her complaint, BVVG is responsible for "the management, marketing and sale of expropriated properties located in the former [East Germany]."  Am. Compl. ¶ 8.  She further alleges that BVVG "provides information about the expropriated properties it controls to potential buyers, including lease and purchase prices, and other commercial terms," and that its predecessor agency engaged in marketing and sales through its website.  <u>Id.</u>  Plainly, these alleged functions—managing, marketing, and selling property—are commercial in nature, not governmental.

BVVG's contention that its core functions are governmental because it privatizes property in furtherance of German reunification misses the mark.  At a high level of abstraction, most government-owned corporations can be said to pursue the national interest of the state.  But just because an entity's overarching *purpose* is to further some public goal does not mean that the entity's core *functions* are inherently governmental.  To take but one example, although a state-owned bank may pursue the public goals of stabilizing the economy and allowing citizens

14

to access credit, its day-to-day functions of offering loans, collecting payments, and paying interest are commercial.  See Shoham, 922 F. Supp. 2d at 49 (holding that a state-owned bank's core functions are commercial).  If the Court were to adopt BVVG's argument, then the FSIA's delineation between the "foreign state" and its "agenc[ies] or instrumentalit[ies]" would collapse because every state-owned corporation would simply argue that its core functions are governmental because it furthers a state interest.  That cannot be right.  Accordingly, the Court holds that Schubarth has sufficiently pled that BVVG's core functions are commercial.[10]

### 3. *Failure to State a Claim*

Lastly, BVVG seeks dismissal of Schubarth's complaint under Rule 12(b)(6) on the ground that she has failed to state a claim that BVVG is in any way liable for *Germany*'s alleged expropriation of her property.  As BVVG recognizes, Renewed MTD at 14, the Court may consider this merits-based argument only if it were to decide to assert subject-matter jurisdiction. See Kaplan, 896 F.3d at 513.  Because the Court holds only that Schubarth has adequately pled jurisdiction under the FSIA to obtain jurisdictional discovery, but does not conclude that jurisdiction definitively exists, the Court must decline to decide this issue at this time.

### B. Schubarth's Motion to Amend

After BVVG filed its reply in support of its renewed motion to dismiss, Mrs. Schubarth filed a motion for leave to amend the complaint, which BVVG and Germany opposed.  To recap, Schubarth indicates that she seeks to amend her complaint in order to: (1) add Germany back to the case by asserting jurisdiction over the country on the grounds that BVVG is Germany's alter

---

[10] Because the Court concludes that Schubarth has adequately pled jurisdiction under the FSIA's expropriation exception, it does not address whether she has plausibly alleged jurisdiction under the FCN Treaty.

ego; (2) shore up her position that BVVG's core functions are commercial and not governmental; (3) support her position that the Court should equitably toll the statute of limitations due to Schubarth's "diligent efforts to exhaust her administrative remedies"; and (4) bolster her position that BVVG is liable for aiding and abetting Germany and/or conspiring with Germany in the alleged expropriation.  The Court will first address whether it will exercise its discretion to grant Schubarth's amendments before turning to the question whether Schubarth is entitled to amend as of right.

### 1.   The Court will allow some discretionary amendments

Schubarth urges the Court to permit the proposed amendments in the exercise of its discretion under Federal Rule of Civil Procedure 15(a)(2), which directs courts to "freely give leave [to amend] when justice so requires."  As the Supreme Court has observed:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962).  "[T]he party opposing amendment bears the burden of showing why leave to file an amended pleading should not be granted."  Roe v. Wilson, No. 18-cv-00171, 2018 WL 4473517, at *1 (D.D.C. Sept. 14, 2018) (Cooper, J.).

Of the factors to consider in determining whether to grant a motion for discretionary amendment —prejudice, bad faith, undue delay, and futility—the most important one is prejudice to the opposing party.  McKinney v. United States Postal Serv., 2015 WL 13680781, at *3–4 (D.D.C. May 18, 2015) (Cooper, J.) (collecting cases) ("Courts in this circuit have repeatedly held . . .  that delay alone is an insufficient ground to deny the motion unless it

prejudices the opposing party." (internal quotation marks omitted)).  A party may establish

sufficient prejudice by showing that "it was unfairly disadvantaged or deprived of the

opportunity to present facts or evidence which it would have offered had the amendments been

timely.'"  In re Vitamins Antitrust Litig., 217 F.R.D. 30, 32 (D.D.C. 2003) (internal quotation

omitted).  Alternatively, prejudice may result when an amendment "substantially changes the

theory on which the case has been proceeding and is proposed late enough so that the opponent

would be required to engage in significant new preparation."  Djourabchi v. Self, 240 F.R.D. 5,

13 (D.D.C. 2006) (quoting Wright, Miller, & Kane, Fed. Prac. & Proc., § 1487 (2d ed. 1990)).

The requisite prejudice may also be shown if "the non-moving party would be put to the

additional expense and burden of a more lengthy and complicated trial or where the issues raised

by the amendment are remote to the issues in the case."  McKinney, 2015 WL 13680781, at *4

(internal quotations omitted).  On the other hand, "where the proponent of the amendment

establishes that the additional claim would not 'unduly increase discovery or delay the trial, and

when the opponent could not claim surprise,' . . . the amendment should be allowed."

Djourabchi, 240 F.R.D. at 13 (quoting Wright, Miller, & Kane, Fed. Prac. & Proc., § 1487 (2d

ed. 1990)).

  Turning to Schubarth's proposed amendments, she newly alleges that the government of

Germany "owns 100% percent of [BVVG's] shares," Am. Compl. ¶ 4, that it "exercises control

over BVVG's day-to-day operations," id. ¶¶ 5–6, and that BVVG "remits its profits from sales

and leases of expropriated lands to the German Treasury," id. ¶ 7.  Based on these new

allegations, Schubarth seeks to reassert subject matter jurisdiction over Germany under what she

calls an "alter ego" theory.

Schubarth locates this supposed theory of jurisdiction in <u>de Csepel v. Republic of Hungary</u> ("<u>de Csepel II</u>"), 859 F.3d 1094, 1107 (D.C. Cir. 2017).  <u>Id.</u> ¶ 12.  There, she contends, the D.C. Circuit "established new law of the circuit . . . that where an agency or instrumentality of a foreign sovereign acts [as] the alter ego of the sovereign, in connection with its ownership or operation of expropriated property or its commercial activity in the United States, a plaintiff may establish subject matter jurisdiction over the sovereign pursuant to 28 U.S.C. § 1605(a)(3), *even if the expropriated property is not within the United States*."  Pl. Reply, ECF No. 54, at 8 (emphasis in original); <u>see also</u> Am. Comp. ¶ 12 ("A foreign state loses its immunity under section 1605(a)(3) where its agent acts as the alter ego of the foreign state while engaging in commercial activity in the United States.") (citing <u>de Csepel II</u>, 859 F.3d at 1107; <u>Foremost-McKesson, Inc. v. Islamic Republic of Iran</u>, 905 F.2d 438, 446 (D.C. Cir. 1990).

Schubarth points to this purported intervening change in law to excuse her failure to include the proposed allegations in her initial complaint over five years ago.  But <u>de Csepel II</u> did not create a new theory of FSIA jurisdiction.  Rather, the Circuit in <u>de Csepel II</u> endorsed its earlier decision in <u>Simon v. Republic of Hungary</u>, 812 F.3d 127 (D.C. Cir. 2016) ("<u>Simon I</u>"), in holding that "[a] foreign state loses its immunity [under the FSIA's expropriation exception] if the claim against it satisfies the exception by way of the first clause of the commercial-activity nexus requirement; by contrast, an agency or instrumentality loses its immunity if the claim against it satisfies the exception by way of the second clause," 859 F.3d at 1107.

It rooted that holding in the presumption that foreign states are legally distinct from their agencies and instrumentalities.  In so doing, the opinion quotes the statement from the Circuit's 1990 ruling in <u>Foremost-McKesson</u>, 905 F.2d at 446–47, that "absent an agency relationship, the court lacks subject matter jurisdiction over the foreign state for the acts of its

instrumentality." <u>Id.</u>  Schubarth homes in on the introductory clause of that statement—"absent

an agency relationship"—and implies from it a corollary legal proposition: that a state may be

held liable for the commercial activities of an instrumentality with which it *does* have an agency

relationship.  She then seeks to extend this principle to the expropriation exception to assert

jurisdiction over Germany under the second clause of that exception, notwithstanding that <u>de</u>

<u>Csepel II</u> clearly says that a foreign state can lose its immunity only under the first clause (i.e.,

where the property is located in the United States).

      The viability of such an end run around <u>de Csepel II</u>'s clear holding is far from evident to

the Court.[11]  What is clear, however, is that the argument Schubarth advances to support its

availability does not spring from <u>de Csepel II</u>.  It comes instead from <u>Foremost-McKesson</u> and

even older cases dealing with situations where the foreign state exerts sufficient control over an

instrumentality such that a plaintiff may overcome the presumption that the two are legally

distinct for purposes of the commercial activities exception to the FSIA, 28 U.S.C. § 1605(a)(2).

<u>See</u> <u>Gilson</u>, 682 F.2d at 1026 n.16; <u>Hester Int'l Corp. v. Fed. Republic of Nigeria</u>, 879 F.2d 170,

176 (5th Cir. 1989).  Accordingly, the argument was available to Schubarth when she filed her

initial complaint, which severely weakens her reliance on <u>de Csepel II</u> to justify her failure to

raise it earlier.[12]

---

[11] While Germany nominally opposed the proposed amendment as futile, its briefing does not address Schubarth's reading of <u>de Csepel II</u> in any detail.

[12] To be sure, <u>de Csepel II</u> clarified a degree of confusion in the Circuit as to whether a foreign state can lose immunity under § 1605(a)(3) by way of either the first or second clause of the expropriation exception.  <u>de Csepel II</u> followed the Circuit's January 2016 ruling in <u>Simon I</u> that immunity over the state can be abrogated only under the first clause.  859 F.3d at 1107 ("Applying <u>Simon</u> to the facts of this case, we have jurisdiction through only the second clause of the commercial-activity nexus requirement, meaning that the Republic of Hungary retains its FSIA immunity.").  An earlier case, <u>Agudas Chasidei Chabad of U.S. v. Russian Federation</u>, 528

Allowing Schubarth to assert a new theory of FSIA jurisdiction—when she could have raised it at an earlier stage—would prejudice Germany.  Such an amendment would require Germany to defend against a new theory of subject-matter jurisdiction raised over five years after Schubarth's complaint was originally filed, and after briefing and appeal of a dispositive motion. See Djourabchi, 240 F.R.D. at 13 (finding prejudice where a proposed amendment "substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation"); see also Wilderness Soc'y v. Griles, 824 F.2d 4, 19 (D.C. Cir. 1987) (finding no abuse of discretion in a denial of a plaintiff's motion to amend the complaint where "[t]he District Court explained that plaintiffs' motion occurred more than a year after the filing of their initial complaint and after dispositive motions had been filed and opposed").  Due to that prejudice, the Court denies Schubarth's motion to amend her complaint to assert "alter-ego" jurisdiction over Germany.

As to the remaining amendments, however, the only prejudice to consider is whether *BVVG* would be harmed by allowing Schubarth to amend her complaint.  And BVVG is unable to establish prejudice because it has not shown that it would be "unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely."  In re Vitamins Antitrust Litig., 217 F.R.D. at 32 (internal quotations

---

F.3d 934 (D.C. Cir. 2008), had suggested that a foreign state could lose immunity under either clause, but the de Csepel II panel concluded that Chabad had not expressly confronted the question, 859 F.3d at 1106–07.  So, to the extent Schubarth is arguing that it was unclear before de Csepel II that she could not proceed against Germany under the § 1605(a)(3)'s second clause absent some "alter ego" theory, that argument fails in light of Simon I.  In other words, Schubarth was on notice when Simon I was decided in January 2016 that Germany was presumptively immune from suit unless the first clause of § 1605(a)(3) applies.  At that time, Germany had not yet filed its initial motion to dismiss for lack of jurisdiction.  Schubarth therefore was equally positioned to raise her alternative "alter ego" theory in response to Germany's motion as she is now.

omitted).  The remaining proposed amendments do not seek to establish new legal theories or to

bring a dismissed defendant back into the case; they only seek to supplement the factual

allegations made in Schubarth's original complaint.  Moreover, discovery has yet to take place,

so BVVG has not lost the opportunity to present facts or evidence in response to Schubarth's

amendments.  For those reasons, the Court will exercise its discretion to permit Schubarth to

amend her complaint to bolster her jurisdictional arguments concerning BVVG's core functions,

her contention that the Court should equitably toll the statute of limitations due to Schubarth's

"diligent efforts to exhaust her administrative remedies," and her aiding and abetting liability

theory.

        *2.   Schubarth is not entitled to amend as of right*

In addition to asking the Court to exercise its discretion to permit her proposed

amendments under Rule 15(a)(2), Schubarth maintains that she has a right to amend her

complaint without leave under Federal Rule of Civil Procedure 15(a)(1)(B).  Mot. to Amend,

ECF No. 50, at 2.  Because the Court will not allow Schubarth to assert a new "alter ego" theory

of subject matter jurisdiction over Germany as a matter of discretion, it must consider whether

she may do so as a matter of right.

Rule 15(a), entitled "Amendments before Trial," provides:

(1)     A party may amend its pleading once as a matter of course within:

       (A)     21 days after serving it, or

       (B)     if the pleading is one to which a responsive pleading is required, 21
               days after service of a responsive pleading or 21 days after service of
               a motion under Rule 12(b), (c), or (f), whichever is earlier.

To recap the substance and timing of the relevant proceedings: Schubarth filed her initial

complaint in December 2014.  In April 2016, after service of process was accomplished, both

defendants moved to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction on grounds of sovereign immunity.[13]  Mot. to Dismiss, ECF No. 16, at 6–10.  Germany maintained that it was immune because the subject property was undoubtedly not "present in the United States" as required to abrogate Germany's immunity under the first clause of 28 U.S.C. § 1605(a)(3).  Id. at 5.  BVVG, meanwhile, asserted two alternative grounds for immunity: first, that BVVG was in fact a "foreign state" due to its governmental role in the German reunification process and therefore was immune to the same extent as Germany itself under the first clause of § 1605(a)(3), id. at 6–7, and second, that even if BVVG were found to be an agency or instrumentality of Germany, it was still immune because Schubarth had not alleged facts showing that BVVG conducts commercial activity in the United States, as required under the second clause of § 1605(a)(3), id. at 8–9.

Schubarth chose not to amend her complaint in response to either defendant's asserted jurisdictional deficiencies.  This Court ultimately granted both defendants' motions and Schubarth appealed.  In June 2018, the Circuit affirmed the Court's dismissal of the complaint against Germany.  Schubarth, 891 F.3d at 394–95 ("[A] foreign state is immune to claims for the expropriation of property not present in the United States, and Schubarth does not dispute that the estate is located abroad or that Germany is the foreign state itself.").  It reversed the dismissal as to BVVG, however, finding that Schubarth had plausibly alleged that the agency had recently conducted commercial activity in the United States so as not to foreclose application of the second clause of § 1605(a)(3).  Id. at 395.  Before the D.C. Circuit, Schubarth attempted to assert her alternative "alter ego" theory of jurisdiction over Germany, but the court refused to consider

---

[13] The motion also contained other grounds for dismissal not relevant here.

the argument because it was raised for the first time on appeal.  Id. at 401 n.7.  Accordingly,

following the D.C. Circuit's decision, Germany was no longer a defendant in the case.

On remand, BVVG filed a renewed motion to dismiss under Rules 12(b)(1), (2), and (6).

Schubarth responded 21 days later, on April 22, 2019, with a motion for leave to amend the

complaint with new jurisdictional allegations against *both* defendants, which she insists she has a

right to file under Rule 15(a)(1)(B).  Schubarth roots her position in a literal reading of the rule:

She has only amended her complaint "once" during the case and the amendment comes within

"21 days after service of a motion under 12(b)"—namely, BVVGs' renewed motion to dismiss

on remand.

Clever perhaps, but unpersuasive.  To start, under the prior version of Rule 15(a), it was

well established that "Rule 15(a) 'guarantees a plaintiff an absolute right' to amend the

complaint once at any time so long as the defendant has not served a responsive pleading and *the*

*court has not decided a motion to dismiss*." Adams v. Quattlebaum, 219 F.R.D. 195, 196 (D.D.C.

2004) (quoting James v. Hurson Assocs., Inc. v. Glickman, 229 F.3d 277, 282-83 (D.C. Cir.

2000)); Carter v. Dep't of the Navy, No. CIV.A.05CV0775 (RBW), 2006 WL 2471520, at *5

(D.D.C. Aug. 24, 2006), aff'd sub nom. Carter v. U.S. Dep't of Navy, 258 F. App'x 342 (D.C.

Cir. 2007) (same).  Here, this Court (and the Circuit) have already decided a motion to dismiss.

Thus, under the prior version of the rule, Schubarth would be barred from amending her pleading

as of right.[14]

_____

[14] Prior to the 2009 amendments, Rule 15(a)(1) stated:

(1)     A party may amend its pleading once as a matter of course:

(A)     before being served with a responsive pleading; or

In 2009, Rule 15(a) was amended to its present form, but it is unclear whether those changes somehow altered the above-cited case law.  Neither party has cited a case—and the Court has not found one—discussing the question presented here: whether the 21-day amendment-as-of-right clock begins anew upon a defendant's service of a renewed 12(b) motion after remand.[15]  The plain text of the rule could be interpreted to support Schubarth's position that a plaintiff is entitled to amend within 21 days of "any" 12(b) motion, including a renewed motion following remand, even if she did not amend following the initial motion to dismiss.  But the text could also be read otherwise: that once a 12(b), (e), or (f) motion is served, the plaintiff has 21 days to amend as of right, period, and any subsequent amendment after *that particular* Rule 12 motion was served requires leave of the court.

---

> (B)    within 20 days after serving the pleading if a responsive pleading is not allowed and the action is not yet on the trial calendar.

Fed. R. Civ. P. 15(a)(1) (2009).

[15] The most similar case found by the Court appears to be U.S. ex rel. D'Agostino v. EV3, Inc., 802 F.3d 188 (1st Cir. 2015).  There, the plaintiff had exercised his right to file an amended complaint as a matter of course prior to serving the complaint.  Id. at 190. Subsequently, the defendant filed a motion to dismiss and, within 21 days of that motion, the plaintiff filed another amended complaint, without seeking the consent of the opposing party or leave of court.  Based on a literal reading of Rule 15, a plaintiff contended that his "right to amend as a matter of course renewed each time the defendants filed a responsive pleading (either an answer or a responsive motion) to a particular version of the complaint."  Id. at 192.  The First Circuit disagreed.  Finding that "[t]his tortured interpretation of Rule 15 not only defies common sense but also runs contrary to the historic structure of Rule 15 and to the stated purpose of the 2009 amendments to the Rule," the First Circuit held that a "plaintiff may amend a complaint only once as a matter of course under Rule 15(a)(1)" and that right did not renew upon a defendant's filing of a responsive pleading.  Id.  While the First Circuit's decision lends some support to the Court's analysis of Schubarth's claim, D'Agostino is distinguishable because there the plaintiff had previously exercised his right to amend his complaint as a matter of course. Thus, it was a simpler case.

The latter reading hews more closely to the purpose of the Rule.  Rule 15(a)(1) was amended in 2009 to terminate the right to amend a complaint within 21 days after service of a motion under Rule 12(b), (e), or (f).  Fed. R. Civ. P. 15, advisory committee notes to the 2009 amendment.  Previously, the right was terminated only by service of a "responsive pleading," which a Rule 12 motion is not.  Id.  The Advisory Committee Notes explain that the rule was changed to "force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion."  Id.  The Notes also observe that "[a] responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised seriatim."  Id.  To serve that purpose, the Notes further explain that "[i]f a responsive pleading is served after one of the designated motions is served, for example, there is no new 21–day period."  Id.  In other words, the Notes clarify that if a 12(b) motion is served and then subsequently a response is filed, the responsive pleading does not revive plaintiff's right to amend the complaint.  Accepting Schubarth's position would defeat these purposes—especially the avoidance of seriatim determination of issues—by giving plaintiffs a right to amend long after pleading deficiencies have been first brought to their attention.[16]

---

[16] Schubarth's argument that 28 U.S.C. § 1653 provides her with a right to amend fares no better.  Although that statute provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts," Courts have interpreted the statute as simply allowing a plaintiff to cure deficient allegations of jurisdictional *facts*.  See D.C. ex rel. Am. Combustion, Inc. v. Transamerica Ins. Co., 797 F.2d 1041, 1044 (D.C. Cir. 1986) ("Section 1653's liberal amendment rule permits a party who has not proved, or even alleged, that diversity exists to amend his pleadings even as late as on appeal.").  It does not follow that Schubarth must be allowed to amend her complaint to allege new *theories* of jurisdiction.  Cf. Am. Hosp. Ass'n v. Azar, 895 F.3d 822, 828 (D.C. Cir. 2018) ("[Section] 1653 . . . merely allows appellate courts to consider additional allegations that the district court did in fact have jurisdiction.").

Again, because the Court has exercised its discretion to allow Schubarth's proposed amendments concerning BVVG, it need not decide whether she is entitled to make those amendments as of course under Rule 15(a)(1)(B). As for her proposed amendment to reassert jurisdiction over Germany, however, the Court finds that Schubarth may not amend as of right. Germany was dismissed from the case over three years ago on the very immunity defense that Schubarth now wishes to challenge through her amendment. That dismissal was upheld on appeal. And the only 12(b) motion now before the Court is that of Germany's co-defendant, BVVG. Germany has filed just one 12(b) motion and that was in 2016. In similar contexts, courts in this district have held that the right to amend is defendant-specific. See Villery v. D.C., 277 F.R.D. 218, 219 (D.D.C. 2011) ("In cases involving multiple defendants . . . the plaintiff may not file his amendment as a matter of right concerning those defendants who filed an answer or a Rule 12(b), (e), or (f) motion more than 21 days before the plaintiff attempts to make such a filing."); see also Scott–Blanton v. Universal City Studios Productions, LLP, 244 F.R.D. 67, 69 (D.D.C. 2007) (same). It therefore follows that even if BVVG's 12(b) motion allowed Schubarth to amend her complaint with regard to BVVG, the window for amending the complaint with regard to Germany is long past. Permitting Schubarth to amend as a right against a dismissed defendant, to cure the very pleading deficiencies that led to the dismissal, would clearly undermine the purposes of Rule 15(a)(1)(B). Accordingly, the Court will not permit amendment as of right with respect to Germany.[17]

---

[17] Germany also argues that Schubarth is precluded from filing an amended complaint against it by virtue of the Court's dismissal of the initial complaint and the D.C. Circuit's subsequent affirmance and mandate as to Germany. See United States v. Kpodi, 888 F.3d 486, 491 (D.C. Cir. 2018) ("The mandate rule embodies the simple principle that an inferior court has no power or authority to deviate from the mandate issued by an appellate court. It is a more powerful version of the law-of-the-case doctrine, which prevents courts from reconsidering

## IV.  Jurisdictional Discovery

So where does the case go from here?  The existence of subject matter jurisdiction over BVVG under the second clause of the FSIA's expropriation exception turns on two issues of fact: whether BVVG is an "agency or instrumentality" of Germany (as opposed to the state itself, as it suggests) and whether BVVG "is engaged in commercial activity in the United States." Schubarth has adequately alleged both conditions.  As a result, jurisdictional discovery is warranted to enable the parties to develop a factual record for the Court to consider in assessing its jurisdiction.  See Crist v. Republic of Turkey, 995 F. Supp. 5, 12 (D.D.C. 1998) ("Requests for jurisdictional discovery should be granted only if the plaintiff presents non-conclusory allegations that, if supplemented with additional information, will materially affect the court's analysis with regard to the applicability of the FSIA." (internal citations and quotation marks omitted)); see also FC Inv. Grp. LC v. IFX Markets, Ltd., 529 F.3d 1087, 1093–94 (D.C. Cir. 2008) ("In order to engage in jurisdictional discovery, the plaintiff 'must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant.'" (quoting Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC, 148 F.3d 1080, 1090 (D.C. Cir. 1998)).

---

issues that have already been decided in the same case.") (internal citation and quotation marks omitted).  As Schubarth points out, however, the Court dismissed the initial complaint against Germany for lack of subject matter jurisdiction.  Such a dismissal does not constitute dismissal on the merits and therefore has no res judicata effect.  Fed. R. Civ. P. 41(b) (A dismissal for "lack of jurisdiction" does not operate as an "adjudication on the merits."); Dozier v. Ford Motor Co., 702 F.2d 1189, 1194 (D.C. Cir. 1983) (A dismissal for lack of subject matter jurisdiction should be "without prejudice . . . to make it clear that appellant was not to be precluded by the doctrine of res judicata from having his claim heard on the merits in [another proceeding].").

The Court will therefore direct the parties to confer and submit a joint proposal (or competing proposals if agreement cannot be reached) for the scope and timing of such discovery.[18]  The parties should also consider whether to include discovery on BVVG's statute-of-limitations defense, including Schubarth's argument that the statute should be equitably tolled, within the scope of this initial discovery.  While not strictly "jurisdictional," early resolution of this threshold issue may well serve the interests of fairness and efficiency given the already protracted history of the case.  See Matar, 910 F.3d at 541.

## V.   Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that [46] Defendants' Motion to Dismiss is DENIED.  It is further

**ORDERED** that [51] Plaintiff's Motion to File an Amended Complaint is GRANTED IN PART and DENIED IN PART.  Plaintiff is

**ORDERED** to file an amended complaint that complies with this opinion by **March 27, 2020**.  The Parties are further

**ORDERED** to meet and confer and then to submit a joint jurisdictional discovery proposal by **April 3, 2020**.

**SO ORDERED**.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  March 12, 2020

_____

[18] It strikes the Court that application of the FSIA's waiver exception, by virtue of Article XVIII, Paragraph 2 the FCN Treaty, also turns on whether BVVG is engaged in commercial activity in the United States.  To the extent the parties believe the Court will need to resolve additional factual questions in determining whether the waiver exception applies, they should include those questions within the scope of the proposed discovery.